UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

**ROBERT NARVETT,**

**Petitioner,**

**v.** **Case No. 26-C-610**
**Criminal Case No. 21-CR-50**

**UNITED STATES OF AMERICA,**

**Respondent.**

---

## ORDER DENYING 28 U.S.C. § 2255 MOTION TO VACATE SENTENCE

---

Petitioner Robert Narvett seeks postconviction relief under 28 U.S.C. § 2255 from his conviction and sentence for wire fraud. Narvett was indicted on March 2, 2021, on eleven counts, including fraud, identity theft, and money laundering. CR Dkt. No. 1. The Court had previously entered a civil judgment against Narvett in 2013 on a complaint filed by the U.S. Securities and Exchange Commission, charging him with fraud. Even after that civil judgment was entered, however, Narvett continued to operate his scheme, swindling over $2.3 million from at least fifty victims from 2014 to 2019. CR Dkt. No. 111-1 at 2.

On January 21, 2022, Narvett entered a plea of guilty to one count of wire fraud in violation of 18 U.S.C. § 1343 and one count of money laundering in violation of 18 U.S.C. §§ 1956(a)(1)(A) and 2(a) pursuant to a written plea agreement, which included an appeal waiver. CR Dkt. Nos. 32, 33. On May 4, 2022, after listening to ten of the fifty victims of Narvett's Ponzi scheme and considering the prior civil judgment entered against him, the Court imposed an above-guideline

sentence of 180 months imprisonment. CR Dkt. No. 48. Judgment was entered on May 9, 2022, and on May 20, 2022, Narvett filed a notice of appeal. CR Dkt. Nos. 49, 51.

After the notice of appeal was filed, Narvett's attorney discovered that the recording of the change-of-plea hearing had been lost and so no transcript of the hearing was available. Narvett then argued on appeal that his guilty plea must be vacated because, without the benefit of a definitive record, the Court could not determine that his guilty plea was knowing and voluntary. The Court of Appeals concluded that the written plea agreement, the colloquy at sentencing, and the record as a whole established that Narvett had adequate knowledge of his appeal waiver and that his guilty plea was voluntary. The Court therefore concluded that Narvett's guilty plea could stand and affirmed his conviction. CR Dkt. No. 111-1. The United States Supreme Court denied Narvett's petition for certiorari on October 6, 2025. 146 S. Ct. 251.

On April 9, 2026, Narvett filed a timely motion to vacate his conviction and sentence pursuant to 28 U.S.C. § 2255, alleging ineffective assistance of counsel on the part of his attorney, Robert G. LeBell. CV Dkt. No. 1. In his motion, Narvett alleges that his attorney provided ineffective assistance at both the pleading and sentencing stage of his case. At the pleading stage, Narvett argues that his attorney failed to advise him of the possibility of obtaining an exception to the appeal waiver for an above-guideline sentence or, alternatively, entering a guilty plea without an agreement. Narvett also claims Attorney LeBell was ineffective at the pleading stage in failing to "cure ambiguity within the plea agreement to what 'reasonable' was defined as in sentencing." *Id.* at 4. At the sentencing stage, Narvett claims counsel was ineffective in failing to offer an analysis of similar cases and in failing to object to the Court's conclusion that this case was unlike many other white-collar crimes. *Id.* at 5. Narvett further alleges that Attorney LeBell was also ineffective at sentencing in failing to object to the Court's rejection of his argument that, given

Narvett's education and experience, a shorter sentence would allow him to pay restitution to his victims, as well as the Court's consideration of his inability to pay restitution as a factor in sentencing. *Id.* at 7. Finally, Narvett alleged that counsel was ineffective in failing to pursue details about a particular unidentified document that surfaced in discovery. *Id.* at 8. (The last claim has since been abandoned.)

Upon initial review of the motion pursuant to Rule 4 of the Rules Governing § 2255 Motions, the Court ordered the government to respond. The government thereafter moved for an order finding that Narvett had, in filing his § 2255 motion, waived his attorney-client privilege over communications with his attorney relating to his claims and directing Attorney LeBell to communicate with the government concerning those claims. CV Dkt. No. 11. The Court granted the government's motion without objection, and the government has now filed an affidavit by Attorney LeBell along with its response. CV Dkt. Nos. 14, 15-1. Narvett has filed his reply and the case is now ripe for decision. CV Dkt. No. 16. For the reasons that follow, Narvett's motion will be denied.

"A § 2255 petitioner is entitled to an evidentiary hearing on his claim where he alleges facts that, if true, would entitle him to relief." *Lafuente v. United States*, 617 F.3d 944, 946 (7th Cir. 2010) (citing *Sandoval v. United States*, 574 F.3d 847, 850 (7th Cir. 2009), and *Hall v. United States*, 371 F.3d 969, 972 (7th Cir. 2004)). A hearing is not required, however, when "the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b); *Cooper v. United States*, 378 F.3d 638, 641–42 (7th Cir. 2004). Because the record of the case conclusively shows that Narvett is not entitled to relief, an evidentiary record is not required here.

Claims of ineffective assistance of counsel are assessed under the familiar standards set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). Under *Strickland*, the petitioner must establish both that his attorney's performance was deficient, and that the deficiency prejudiced him. *Id.* at 687. Counsel's performance is deficient if "the identified acts or omissions were outside the wide range of professionally competent assistance." *Id.* at 690. Judicial scrutiny of counsel's performance is "highly deferential." *Id.* at 689. This is because "[i]t is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particularized act or omission of counsel was unreasonable." *Id.* This means that "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance" and "the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Id.* (quoting *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)).

The right to effective assistance of counsel extends to plea negotiations, *Lafler v. Cooper*, 566 U.S. 156, 162 (2012), and to sentencing, *Jackson v. Miller*, 260 F.3d 769, 775 (7th Cir. 2001) (citing *Gardner v. Florida*, 430 U.S. 349, 358 (1977)). "To establish prejudice in the pleading context, the petitioner must prove that there is a reasonable probability that he would not have pled guilty absent his attorney's deficient conduct." *Hutchings v. United States*, 618 F.3d 693, 697 (7th Cir. 2010) (first citing *Hill v. Lockhart*, 474 U.S. 52, 59 (1985); and then citing *Morales v. Boatwright*, 580 F.3d 653, 663 (7th Cir. 2009)). "To make that showing, the petitioner must do more than simply allege 'that he would have insisted on going to trial'; he must also come forward with objective evidence that he would not have pled guilty." *Id.* (citing *United States v. Cieslowski*, 410 F.3d 353, 359 (7th Cir. 2005)). To establish prejudice at sentencing, the

petitioner must show that counsel's deficient performance resulted in a lengthier sentence. *Glover v. United States*, 531 U.S. 198, 203–04 (2001).

Narvett first argues that Attorney LeBell performed deficiently by negotiating a plea agreement with a standard appeal waiver that failed to include an exception to the waiver in the event the judge imposed a sentence higher than the range determined under the sentencing guidelines. He suggests that he did not understand the Court could impose a sentence above both the sentence range under the guidelines and the government's recommendation. He further contends that Attorney LeBell should have informed him of the possibility of an open plea rather than a guilty plea and that, due to counsel's failure to so inform him, he believed his only alternative to trial was a guilty plea. Finally, Narvett contends that Attorney LeBell told him he would likely end up in a prison camp. CV Dkt. No. 2 at 5.

The record clearly refutes Narvett's claim that Attorney LeBell provided deficient representation during the plea negotiations. As Attorney LeBell explains in his affidavit, the appeal waiver provision in the plea agreement was the standard appeal waiver provision used in the Eastern District of Wisconsin and was fully explained to Narvett. In his over fifty years of experience representing defendants in the federal and state courts of Wisconsin, he has never seen an exception to the appeal waiver such as that described by Narvett. CV Dkt. No. 15-1 ¶ 13. Failing to negotiate such an exception, even assuming the government would agree to it, cannot be considered deficient performance under these circumstances.

Narvett suggests he would have elected to plead guilty to all of the charges without a written plea agreement had Attorney LeBell advised him that was an option. But Narvett did not need an attorney to advise him pleading guilty to all of the charges without a plea agreement was an option. The fact that a defendant can elect to plead guilty without an agreement with the

government is implicit in the entire process of plea negotiations. As both the government and Attorney LeBell observe, however, there were sound strategic reasons for a defendant to enter a plea agreement with the government, as opposed to an "open plea." In particular, an open plea would not have secured the benefits which were obtained by negotiating a guilty plea with the government, including the government's agreement to recommend a sentence within the guidelines and the government's dismissal of the remaining charges, including an aggravated identity theft charge. CV Dkt. No. 15-1 ¶ 14. The fact that the Court imposed a higher sentence does not alter this assessment, except through hindsight. It does not show that counsel's performance was deficient.

Narvett was clearly informed that the Court was not bound by the parties' sentencing recommendations or the guidelines. He was explicitly so informed in the written plea agreement. CR Dkt. No. 32 ¶¶ 13, 22. And Attorney LeBell told him so, as well:

> At all times prior to entry of the plea, Mr. Narvett was made aware of the potential penalties. That advice included the fact that the judge could exceed the recommendation of the parties or the PSR writer. Mr. Narvett was advised, prior to the entry of the plea, that the Court had full discretion in the imposition of the sentence, as long as it did not exceed the statutory maximum. The plea agreement, itself, contains an acknowledgment that the Sentencing Guideline provisions have been discussed. See ¶ 11.

Aff. of Robert LeBell ¶ 10.

Narvett concedes that Attorney LeBell did not promise he would receive a particular sentence but argues that the term "reasonable" was ambiguous and Attorney LeBell failed to clarify that term for him. Dkt. No. 2 at 5. He suggests that it should mean that the Court could not exceed the sentence range under the Guidelines. The written plea agreement made clear, however, that the Court was not bound by the parties' recommendation and could impose a

sentence above the guideline range. CR Dkt. No. 32 ¶ 22. In light of this provision, Narvett's argument that such a sentence would necessarily be unreasonable simply fails.

Narvett also fails to show that counsel's performance, assuming it was deficient, actually prejudiced him. He argues that "without question" he would have appealed a sentence above guidelines if counsel's assistance had not been ineffective in failing to explain the option of an open plea. But as the government observes, this is mere hindsight. Narvett did not protest the plea agreement until the Court imposed a sentence above the range recommended by the sentencing guidelines. Neither party knew what sentence the Court would impose beforehand. Neither apparently realized the impact Narvett's crime had on his victims and how the Court would consider that impact in assessing the seriousness of his offense and the need for punishment to reflect the severity of his crimes.

Narvett also claims that at sentencing counsel failed to object to the Court's assessment of his crime as "far worse than the typical white-collar crime." *Id.* at 7. He argues that, to the extent that his crime is more egregious than other white-collar crimes, the sentencing guidelines already provide for a substantially higher sentence than for other white-collar crimes such as tax fraud. Therefore, he argues, there was no need for the Court to exceed the guidelines in imposing a sentence. Citing 18 U.S.C. § 3553(a)(6)'s requirement that a sentencing court consider "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct," Narvett argues that the defendants in many Ponzi-scheme cases went to trial and took no responsibility. Because he pled guilty, Narvett argues that he should have received a lower sentence.

But Narvett fails to show that his counsel's decision to avoid comparing his crime with others was an unreasonable one. As Narvett's counsel affirmed, "non-similar case comparison[s]

would not have been a proper or effective argument in this case, given Mr. Narvett's underlying, aggravated, continuous conduct." Dkt. No. 15-1, ¶ 12. As the government observes, comparing one crime to another is a largely impractical endeavor, given the disparate nature and circumstances of different crimes. Here, the Court took account of the gravity of the offense, the harm caused to the victims, Narvett's persistence in criminal activity, and the need for deterrence in imposing a sentence. Given the overwhelming evidence against him, the Court gave Narvett little credit for his decision to enter a plea of guilty. Even now, Narvett seems to suggest that his only alternative was to plead guilty to all of the charges. There is no reason to believe that had he done so, he would have received a lesser sentence. In sum, Narvett fails to show that counsel was ineffective by failing to object to the Court's characterization of the crime as particularly egregious.

Narvett also argues that counsel provided ineffective assistance by failing to object to the Court's reliance on inaccurate information in sentencing him in violation of *Townsend v. Burke*, 334 U.S. 736, 741 (1948). The inaccurate information, according to Narvett, is the Court's conclusion that he would be unable to pay restitution even if he were given a shorter sentence. *Townsend* addressed a trial court's erroneous belief that a defendant had committed certain crimes when in fact the charges had been dropped. Here, in contrast, Narvett does not challenge any factual information upon which the Court relied, but rather its observation that he would be unlikely to pay restitution even if given a short sentence.

Narvett also argues that the Court's erroneous belief led it to impose a longer sentence than it would have if it had thought he would be able to pay restitution. He cites *Bearden v. Georgia*, 461 U.S. 660, 661–62 (1983), for his argument that a court may not impose a longer sentence based on a defendant's inability to pay restitution. But *Bearden* addressed a court's decision to

revoke a defendant's probation due to his inability to pay restitution. *See id.* As the Government argues, the Court did not impose a longer sentence based on inability to pay restitution; it simply declined to credit his arguments that his sentence should be shortened in order to expedite the payment of restitution. Counsel was not ineffective in failing to object to the Court's analysis.

The record in this case conclusively shows that Narvett is not entitled to relief under § 2255 on any of the claims he has asserted. His motion to vacate, set aside, or correct his sentence is therefore **DENIED** and the case is **DISMISSED**. The clerk is directed to enter judgment accordingly. A certificate of appealability will be denied. I do not believe that reasonable jurists would believe that Petitioner has made a substantial showing of the denial of a constitutional right. Petitioner is advised that the judgment entered by the clerk is final. A dissatisfied party may appeal this Court's decision to the Court of Appeals for the Seventh Circuit by filing in this Court a notice of appeal within 60 days of the entry of judgment. *See* Fed. R. App. P. 3, 4. In the event Petitioner decides to appeal, he should also request that the Court of Appeals issue a certificate of appealability. Fed. R. App. P. 22(b).

**SO ORDERED** at Green Bay, Wisconsin this 9th day of November, 2026.

William C. Griesbach
United States District Judge